SAMUEL J. FORTIER
FORTIER & MIKKO, P.C.
1600 A Street, Suite 101
Anchorage, AK 99501
Telephone: (907) 277-4222
Facsimile: (907) 277-4221
Email: sfortier@fortiermikko.com

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KIMBERLY KASHEVAROF, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| ST. GEORGE TANAQ CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) Case No. 3:15-cv- |

## COMPLAINT

COMES NOW Plaintiff, Kimberly Kashevarof, by and through counsel, and hereby alleges as follows:

### I. PARTIES

1. Plaintiff, KIMBERLY KASHEVAROF, is a former employee of St. George Tanaq Corporation. Ms. Kashevarof worked for St. George Tanaq between 1991 and 2002 and again from November 2007 to July 2014, most recently serving as the corporate Controller.

2. Defendant St. George Tanaq Corporation ("Tanaq") is, upon information and belief, a Village Corporation within the meaning of the Alaska Native Claims Settlement Act, 43 U.S.C. § 1601 et seq.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367 because it posits substantial questions of federal law arising under federal statute, in addition to claims under state law that are supplemental to this action.

   a. The federal statutory law pursuant to which this Court has jurisdiction is the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144(a). *See Bogue v. Amex Corp.*, 976 F.2d 1319 (9th Cir. 1992) (ERISA preemption provides for federal jurisdiction).

   b. Because both the claim arising under federal statutory law and the claims arising under Alaska state law all derive from a common nucleus of operative fact, this Court has supplemental jurisdiction to hear the state law claims.

4. This Court has personal jurisdiction over Defendant, which is a corporation incorporated under the laws of the state of Alaska, and operates with its principal place of business in Anchorage, Alaska.

## III. VENUE

5. Venue is proper in the District of Alaska because this matter arises from an employment agreement between Ms. Kashevarof and Tanaq that was executed and performed within Alaska.

## IV. FACTUAL ALLEGATIONS

6. Plaintiff realleges and incorporates ¶¶ 1 through 5, above.

7. Ms. Kashevarof was employed by Tanaq over two periods, first between 1991 and 2002, and then again from November 2007 through July 2014.

8. Ms. Kashevarof served Tanaq in a variety of professional capacities, most recently as the corporate Controller.

9. In May 2013, Tanaq hired Nathan McCowan as its Chief Executive Officer.

10. Mr. McCowan directly supervised the Tanaq Controller.

11. Beginning in May 2013 through her departure with Tanaq, Mr. McCowan's demeanor towards Ms. Kashevarof was belligerent and demeaning.

12. On or about December 18, 2013, Ms. Kashevarof drew Mr. McCowan's attention to the fact that he was not paying for 50% of his dependents' medical insurance premiums, in violation of Tanaq's express policies.

13. Mr. McCowan ordered Ms. Kashevarof to violate Tanaq policies and not deduct the appropriate dependent insurance premium payments from his salary.

14. As a direct result of Mr. McCowan's emotional and professional abuse in the workplace at Tanaq, and his insistence that Ms. Kashevarof violate corporate policies, Ms. Kashevarof has suffered emotional and physical pain and suffering, and required ongoing medical and psychological treatment.

15. For a number of years up through 2014, Tanaq published to its employees and subsidiaries a personnel policies and procedures manual, which included a provision regarding separation pay.

16. Under Tanaq's personnel policy prior to and during 2014, separation pay was provided for as follows:

> An employee having five (5) years of service with St. George Tanaq Corporation is eligible to receive separation pay in the form of one (1) month salary for every two (2) years of pro rata services for a maximum of twelve (12) months' pay, based on her or her last salary amount.

17. Mr. McCowan, lacking such authority, arbitrarily altered the Tanaq personnel manual in April 2014. The altered manual eliminated any reference to separation pay. It further provided that

> This Manual supersedes all previous employee manuals and memos that may have been issued from time to time on subjects covered in this Manual. Employees have no entitlement to any benefits, compensation, or other terms and conditions offered under any prior Manual. That is to say that no employee is "grandfathered" under any prior policy or Manual issued by the Corporation.

18. Mr. McCowan summarily terminated Ms. Kashevarof's employment with Tanaq on July 23, 2014.

19. When Ms. Kashevarof first separated from employment with Tanaq in 2002 she received separation pay.

20. Ms. Kashevarof's subsequent employment with Tanaq Corporation lasted approximately six years and eight months. Plaintiff's pay rate at the time of her separation from Tanaq was $46.69 per hour.

21. Ms. Kashevarof fulfilled the five-year threshold for the separation pay to vest in November 2012.

22. Based on her six years and eight months' service to Tanaq, Ms. Kashevarof was entitled to at least three months' separation pay under the personnel manual.

23. Upon terminating Ms. Kashevarof's employment, Tanaq failed and refused, despite demand continues to refuse to pay Ms. Kashevarof her vested separation pay.

## V. FIRST CAUSE OF ACTION
## (ERISA VIOLATIONS)

24. Plaintiff realleges and incorporates ¶¶ 1 through 23, above.

25. Plaintiff was entitled to receive a severance benefit upon separation from Tanaq after five years of employment.

26. Plaintiff's severance benefit vested in 2012 after five years of employment.

27. Acting in his official capacity as CEO and President of Tanaq, Mr. McCowan purported to divest Ms. Kashevarof of her vested right to separation pay and intentionally discharged Ms. Kashevarof after he altered the personnel policy to eliminate the severance benefit.

28. Under the separation pay benefit plan, Tanaq should pay Plaintiff a total amount of $25,979.20, representing three months' severance at a rate of $46.96 per hour.

29. Plaintiff had a reasonable expectation that Defendant would provide her with this severance benefit upon separating from employment with Tanaq.

30. By refusing to provide severance pay to Ms. Kashevarof following her separation from Tanaq, Defendant has intentionally and unlawfully denied a vested interest

in a promised benefit to its former employee in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B).

## VI. SECOND CAUSE OF ACTION
### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

31. Plaintiff realleges and incorporates ¶¶ 1 through 30, above.

32. The terms of Tanaq's 2013 Personnel Manual expressly and implicitly governed the employment agreement it had with Plaintiff.

33. Defendant knew or should have known that Ms. Kashevarof's entitlement to separation pay had vested when she completed five years of service at Tanaq and thus become nonforfeitable.

34. Defendant intentionally denied Ms. Kashevarof separation pay upon termination of her employment.

35. Defendant intentionally altered the personnel manual in 2014 to attempt to deprive Ms. Kashevarof of her vested separation pay entitlement.

36. Mr. McCowan, acting in his professional capacity as CEO and President of Tanaq terminated Ms. Kashevarof to retaliate against her for calling attention to his unauthorized receipt of benefits.

37. Defendant's deprivation of Ms. Kashevarof's separation pay was an action that a reasonable person would regard as unfair and contrary to the reasonable expectations of the parties to the employment agreement.

## VII.  THIRD CAUSE OF ACTION
## (WRONGFUL TERMINATION)

38. Plaintiff realleges and incorporates ¶¶ 1 through 37, above.

39. Ms. Kashevarof intended to stay working for Defendant indefinitely.

40. Mr. McCowan, acting in his official capacity as CEO and President of Tanaq, terminated Ms. Kashevarof's employment with Defendant.

41. Alternatively, Mr. McCowan's conduct, including the creation of a hostile and unsafe workplace constituted an unlawful constructive discharge

42. Mr. McCowan caused the amendment to the Tanaq personnel manual purporting to divest employees of their separation pay, and terminated Ms. Kashevarof's employment in retaliation for her having drawn attention to his payroll misconduct and other mismanagement.

## VIII.  FOURTH CAUSE OF ACTION
## (INTENTIONAL AND NEGLIGENT
## INFLICTION OF EMOTIONAL DISTRESS)

43. Plaintiff realleges and incorporates ¶¶ 1 through 42, above.

44. Mr. McCowan, acting in his official capacity as CEO and President of Tanaq, consistently and outwardly demonstrated animus and disdain for Ms. Kashevarof in their professional interactions over the period of time they worked together.

45. Mr. McCowan's irrationally aggressive and inappropriate demeanor towards Ms. Kashevarof intentionally defied any modicum of social decency.

46. Working under Mr. McCowan's direct supervision caused Ms. Kashevarof experienced severe distress, such that she reasonably found the working conditions at Tanaq unbearable.

47. Ms. Kashevarof has sought and received ongoing medical and psychological treatment as a result of her experience working for Defendant prior to and after separating from employment at Tanaq.

## IX. RELIEF REQUESTED

WHEREFORE, Plaintiff prays for relief as follows:

1. For a judgment in favor of Plaintiff and against Defendant in excess of $100,000, to be established upon the evidence at a trial herein;

2. For costs, interest, and attorney's fees; and

3. For such other and further relief as the Court deems just and equitable.

DATED at Anchorage, Alaska, this 28th day of January, 2016.

FORTIER & MIKKO, P.C.
Attorneys for Plaintiff

By: s/Samuel J. Fortier
    Samuel J. Fortier, Esq.
    FORTIER & MIKKO, P.C.
    1600 A St., Suite 101
    Anchorage, Alaska 99501
    Ph: (907) 277-4222
    Fax: (907) 277-4221
    Email: sfortier@fortiermikko.com